*FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

In re                   )    Case No. 19-21310-E-13
                       )    Docket Control No. RJ-6
WANDA COLLIER-ABBOTT,    )
                       )
        Debtor.           )
_____ )

## MEMORANDUM OPINION AND DECISION

Wanda Collier-Abbott, the Debtor, has filed a Motion to Value the secured claim of RRA CP Opportunity Trust 2 ("Creditor").[1] Debtor provides her declaration and the Declaration and Broker's Price Opinion of Osceola Winnumucca Stephenson as evidence of value of the Debtor's primary residence, the real property commonly known as 3101 Spinning Rod Way, Sacramento, California ("Property") that is the only collateral for Creditor's claim in this case. Dckts. 154, 209, 210. Debtor asserts that exception provided in 11 U.S.C. § 1322(c)(2) to the anti-modification provisions of 11 U.S.C. § 1322(b)(2) allow for the valuation and bifurcation of Creditor's allowed claim pursuant to 11 U.S.C. § 506(a).

Creditor has filed an Opposition, which is supported by the Declaration and Appraisal Report of Lynn Johnson. Dckt. 198. Creditor's claim is secured by the second deed of trust against the Property and it is not disputed that some value exists in the Property to secure this claim secured by the second deed of trust. The claim secured by the first deed of trust is identified as that of Bank of New York Mellon, as Trustee. Bank of New York Mellon, Trustee, has filed Proof of Claim No.

---

[1] The Motion to Value Secured Claim has been set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(1) with written opposition filed by Creditor. This is a core matter proceeding arising under the Bankruptcy Code, 11 U.S.C. § 506(a), and for which the bankruptcy judge issues the final orders and judgment. 28 U.S.C. §§ 1334 and 157(a), and the referral of bankruptcy cases and all related matters to the bankruptcy judges in this District. ED Cal. Gen Order 182, 223.

6-1, in which the amount of the secured claim is stated to be ($312,589.38).[2]

Creditor asserts that this is not a "short-term loan" to which the exception provided in 11 U.S.C. § 1322(c)(2) would apply, and therefore 11 U.S.C. § 1322(b)(2) prohibits modification (including a valuation pursuant to 11 U.S.C. § 506(a)) of Creditor's secured only by the Debtor's primary residence.

Upon consideration of the evidence presented, the application of 11 U.S.C. § 1322(c)(2), the last payment on the debt owed to Creditor having come due on April 1, 2020, this bankruptcy case having been filed on March 1, 2019, and that the five years of Chapter 13 plan payments are continuing well after the April 1, 2020 due date; the Motion to Value the secured claim of Creditor is granted, and Creditor's secured claim is determined to have a value of ($157,410.62).

## VALUATION OF SECURED CLAIM

The valuation of property that secures a claim is the first step, not the end result of this Motion brought pursuant to 11 U.S.C. § 506(a). The ultimate relief is the valuation of a specific creditor's secured claim.

11 U.S.C. § 506(a) instructs the court and parties in the methodology for determining the value of a secured claim.

> (a)(1) An **allowed claim of a creditor** secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, **is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property**, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added).

At dispute in this Contested Matter is whether Creditor's claim, secured only by Debtor's primary residence may be valued in this case pursuant to 11 U.S.C. § 506(a), thereby bifurcating the claim into a secured claim for the value in the Property which exists to secure Creditor's second

---

[2] In this Memorandum Opinion and Decision the court identifies the claims, debt, or expenses that would decrease the value of the property by (negative numbers), and the value of collateral or property with positive numbers.

deed of trust lien position, and the balance as a general unsecured claim. As addressed below, Creditor's claim may properly be valued pursuant to 11 U.S.C. § 506(a), notwithstanding that Creditor's only collateral is Debtor's primary residence.

## DISCUSSION

**Determination of 11 U.S.C. § 1322(c)(2) Exception
to the Application of 11 U.S.C. § 1322(b)(2)**

In a matter that the Ninth Circuit Court of Appeals has not yet addressed,[3] Debtor asserts that even though Creditor's claim is secured only by Debtor's primary residence for which there is undisputedly at least some value for Creditor's claim, that claim may be valued as provided in 11 U.S.C. § 506(a). This assertion is based on the 11 U.S.C. § 1322(c)(2) "notwithstanding clause," which makes the prohibition established in 11 U.S.C. § 1322(b)(5) on modifying such claims secured only by the debtor's primary residence not applicable under specified circumstance.

**Review of Claim**

Proof of Claim No. 4-1 was filed on May 6, 2019, for Creditor. The attachments to Proof of Claim No. 4-1 include a Note which is titled "NOTE With Balloon Payment." Proof of Claim 4-1, p. 14. The date of the NOTE is March 24, 2005, and Paragraph 3 of the Note states that all amounts then owing on April 1, 2020, will be due in full on that date. The bankruptcy case was filed on March 1, 2019, approximately one year before the NOTE With Balloon Payment obligation being due in full on April 1, 2020, which is before the final payment will be due during the 60-month term of the plan in this case.

**Review of Statutory Provisions**

In considering this issue, the court begins with the well-established doctrine for statutory construction. The Supreme Court has been very clear in reading and applying the "plain language" stated by Congress in statutes. *Hartford Underwriters Insurance Company v. Union Planters Bank,*

---

[3] The Bankruptcy Appellate Panel of the Ninth Circuit discussed in general terms the exception provided in 11 U.S.C. § 1322(b)(5) concerning modifications of secured claim in the unpublished decision *Palacios v. Upside Invs. LP (In re Palacios)*, 2013 Bankr. LEXIS 9493 (B.A.P. 9th Cir. 2013). That decision does not discuss the application of 11 U.S.C. § 506(a) via the 11 U.S.C. § 1322(c)(2) exception.

1　*N.A.*, 530 U.S. 1 (2000); *United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 103 L. Ed.
2d 290, 109 S. Ct. 1026 (1989).* The basic direction is that Congress says in a statute what it means
and means in a statute what it says. *Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 117 L.
Ed. 2d 391, 112 S. Ct. 1146 (1992);* (quoting *Caminetti v. United States, 242 U.S. 470, 485, 61 L.
Ed. 442, 37 S. Ct. 192 (1917))*; *United Savings Association of Texas v. Timbers of Inwood Forest
Associates, LTD.*, 484 U.S. 365, 371 (1988).

　　　　Beginning with the prohibition on modifying some secured claims in Chapter 13 plans, the Bankruptcy Code provides in 11 U.S.C. § 1322(b)(2) (emphasis added):

> (b) Subject to subsections (a) and (c) of this section, the plan may —
> . . .
> (2) **modify the rights of holders of secured claims**, **other than** a claim **secured only** by a security interest in real property that is the **debtor's principal residence**, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; . . . .

As the Ninth Circuit Court of Appeals addressed in *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); if there is no value in the collateral for the holder of the secured claim, then it may be valued at $0, there being no "secured claim" to be protected by the above. However, if there is any value, then the entire secured claim is protected from valuation under 11 U.S.C. § 506(a).

　　　　Debtor asserts that the above restriction on modifying claims secured by the debtor's residence is itself limited by 11 U.S.C. § 1322(c)(2), which provides (emphasis added):

> (c) **Notwithstanding subsection (b)(2)** and applicable nonbankruptcy law—
> 　　(1) . . . ; and
>
> 　　(2) in a case in which the **last payment** on the **original payment schedule for a claim** secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the **plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title**.

Going to 11 U.S.C. § 1325(a)(5), it states in the provisions applicable to the treatment of Creditor's claim (emphasis added):

> (5) with respect to each allowed secured claim provided for by the plan—

///

      (B)

          (i) the plan provides that—

              (I) the holder of such claim retain the lien securing such claim until the earlier of—

                  (aa) the payment of the underlying debt determined under nonbankruptcy law; or

                  (bb) discharge under section 1328; and

              (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

          (ii) the **value,** as of the effective date of the plan, of property to be **distributed** under the plan **on account of such claim** is **not less than the allowed amount of such claim**; and

          (iii) if—

              (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; . . . .

Looking at the "plain language" of 11 U.S.C. § 1325(a)(5), as made applicable by 11 U.S.C. § 1322(c)(2), it allows for the debtor to provide for the claim of a creditor secured only by the debtor's primary residence by paying that creditor the value of the secured claim, as determined pursuant to 11 U.S.C. § 506(a), and not any amount in excess of the 11 U.S.C. § 506(a) as part of the allowed secured claim.

**Discussion of Applicable Law**

The court begins with the Circuit Court of Appeals decision cited by Debtor, *American General Finance, Inc. v. Paschen (In re Pachen)*, 296 F.3d 1203 (11th Cir. 2002). In that case, the Eleventh Circuit concluded that the 11 U.S.C. § 1322(c)(2) exception works through 11 U.S.C. § 1325(b)(5) to allow not only payment terms to be modified, but also to allow for an 11 U.S.C. § 506(a) valuation.

In 2019, the Fourth Circuit Court of Appeals revisited and reversed a prior decision that went contrary to the ruling in *Paschen*. In *Hurlburt v. Black*, 925 F.3d 154 (4th Cir. 2019), the Fourth Circuit Court of Appeals concluded that the 11 U.S.C. § 1322(c)(2) exception providing for the 11 U.S.C. § 1325(a)(5) treatment for claims that come due in full during the period of the plan to

be modified, includes an 11 U.S.C. § 506(a) valuation of such claims.

Creditor directs the court to the Supreme Court decision, *Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S. 324 (1993), for the proposition that the provisions of 11 U.S.C. § 1332(b)(2), when read in conjunction with 11 U.S.C. § 506, precludes the bifurcation of any and all claims secured by the debtor's primary residence if there is any value to protect such lien.

In *Nobelman*, the Supreme Court determined that the provisions of 11 U.S.C. § 1322(b)(2) focuses on the "rights" of the creditor being protected from modification. *Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S. at 329, 331. These protected rights included the right for the entire obligation to be treated as a secured claim and not be bifurcated pursuant to 11 U.S.C. § 506(a) when there was some value in the collateral for that creditor's claim. While not allowing for bifurcation under the circumstances in Nobelman, the Supreme Court noted that some rights could be modified as permitted under the Bankruptcy Code, such as 11 U.S.C. § 1322(b)(5), which allowed the curing of defaults through the Chapter 13 plan and the automatic stay provisions of 11 U.S.C. § 362. *Id.* at 330. Thus, the protection granted pursuant to 11 U.S.C. § 1322(b)(5) was not sacrosanct and insulated from all other provisions of the Bankruptcy Code that Congress made applicable to a claim secured only by the debtor's residence.

In 1994, one year after *Nobelman*, Congress amended this Code section, adding 11 U.S.C. § 1322(c) as it now exists (relettering former paragraph (c) as (d)) to add the exception to 11 U.S.C. § 1322(b)(2). When the Supreme Court issued its ruling in *Nobelman*, there was not, and there could not have been, consideration of the then yet to be enacted exception to 11 U.S.C. § 1322(b)(2) residence secured claim valuation limitation.

Collier on Bankruptcy provides an extended discussion of this statutory exception in 11 U.S.C. § 1322(c)(2) to the residence secured claim limitations in 11 U.S.C. § 1322(b)(2), which includes, in pertinent part:

> ¶ 1322.17 Exceptions to the Rule Against Modification of Home Mortgages; § 1322(c)(2)
>
> **Section 1322(c)(2) carves out an exception to the rule in section 1322(b)(2)**, which prohibits the modification of the rights of holders of claims secured solely by a security interest in real estate that is the debtor's principal residence. It provides that **if the last payment on the original payment schedule for such a mortgage**

> **is due before the final payment** under the plan is due the debtor may pay **the claim as modified pursuant to section 1325(a)(5)**.
>
> The legislative history of the provision states that it **was intended to overrule the decision** of the Court of Appeals for the Third Circuit in *First National Fidelity Corp. v. Perry*, which held that a debtor could not utilize section 1325(a)(5) to provide for a home mortgage protected from modification by section 1322(b)(2) . . .
>
> Because the plan may not extend beyond five years, **this section will encompass** short-term mortgages, fully matured mortgages, **long-term mortgages** on which the debtor has nearly completed payments, **and mortgages with balloon payments**. Congress obviously believed that debtors with such mortgages needed additional protection. Short-term and **balloon payment mortgages often have high rates or terms that are particularly unfavorable**, which **Congress has deemed deserving of close scrutiny** . . .
>
> **The exception from the modification prohibition** also **overrules** for such mortgages the Supreme Court's decision in *Nobelman v. American Savings Bank*. That decision was **based solely on section 1322(b)(2), to which section 1322(c) is an** [subsequently enacted] **exception**. Again, it is not surprising that Congress would create an exception for the types of mortgages described above, which are often undersecured.

8 Collier on Bankruptcy, ¶ 1322.17 (Sixteenth Edition) (emphasis added)

The most recent Circuit Court authority is the *Hurlburt v. Black*, 925 F. 3d 154 (4th Cir. 2019) decision. In analyzing these interlocking Bankruptcy Code sections, the *Hurlburt* court states:

> Emphasizing that other aspects of Section 1322(c)(2)—not highlighted in *Witt* [the prior Fourth Circuit decision being overruled]—indicate that **Congress intended for the exception to permit modification of "claims," not just "payment[s]," other courts universally have criticized *Witt'*s finding of ambiguity** and attendant reliance on the statute's legislative history. *See, e.g., In re Paschen*, 296 F.3d at 1209; *In re Eubanks*, 219 B.R. at 471-73; *In re Tekavec*, 476 B.R. 555, 556, n. 2 (Bankr. E.D. Wis. 2012); *Geller v. Grijalva (In re Grijalva)*, No. 4:11-bk-25386-EWH, 2012 Bankr. LEXIS 1355, 2012 WL 1110291, at *3-4 (Bankr. D. Ariz. Apr. 2, 2012); *In re Reeves*, 221 B.R. 756, 760 (Bankr. C.D. Ill. 1998); *In re Mattson*, 210 B.R. 157, 158-59 (Bankr. D. Minn. 1997). **Commentators have reached the same conclusion**—the plain language of Section 1322(c)(2) authorizes Chapter 13 plans to modify claims, not just payment schedules. *See* **Nat'l Bankr. Rev. Comm'n, Report of the National Bankruptcy Review Commission 237 (1997) ("[S]ection 1322(c)(2) authorizes a stripdown of an undersecured residential mortgage if final payment would become due during the course of the Chapter 13 plan.")**; 8 Collier on Bankr. (MB) ¶ 1322.17 (2018) (opining that "the plain language of [§ 1322(c)(2)] permits the modification of a claim on [a qualifying] home mortgage through the bifurcation of that claim into secured and unsecured components, with the unsecured component crammed down pursuant to section 1325(a)(5)," and characterizing *Witt* as a "strained reading of the language" that runs "contrary to accepted canons of statutory construction, as well as the great weight of authority, and inconsistent with other language in the subsection that specifically referred to section 1325(a)(5)").

*Hurlburt v. Black*, 925 F. 3d 154, 161 (4th Cir. 2019).

This court's reading of the plain language of these interlocking statutory provisions renders the same result. The plain language states that the limitations under 11 U.S.C. § 1322(c)(2) does not "protect" the allowed claim coming due before the end of the plan from plan treatment as provided under 11 U.S.C. § 1325(a)(5).

Moving to 11 U.S.C. § 1325(a)(5), it provides that for an allowed secured claim, the plan treatment allows for payment of the value of such allowed secured claim over the life of the plan.

To determine the allowed secured claim, Congress provides in 11 U.S.C. § 506(a) that a creditor who has a lien to secure its allowed claim can have both an allowed secured claim to "the extent of the value of such creditor's interest in the estate's interest" in the property securing the claim, and an unsecured claim for the amount of the claim in excess of the value of the property securing the claim.

Debtor is correct that Congress has created an exception from the limitations of 11 U.S.C. § 1322(b)(2) for Creditor's balloon payment note that has come due under the original terms of the note on April 1, 2020 - which is before the last payment will be made on a plan in this case (assuming one is confirmed). Creditor's claim may be valued as provided in 11 U.S.C. § 506(a) to determined the allowed secured claim, and then the allowed secured claim amount be paid as provided in 11 U.S.C. § 1325(a)(5).

**Determination of the Value of the Creditor's Interest in the Estate's Interest In the Property (The Value of Creditor's Collateral)**

Creditor filed the Declaration of Appraiser Lynn W. Johnson, accompanied by the Appraisal Report, in support of Creditor's Opposition on April 6, 2020. Dckt. 198. Johnson is a licensed real estate appraiser in the state of California who has been working as a licensed real estate appraiser since 2005. *Id.* After personally inspecting the property, both the interior and exterior, and comparing the Property with other properties in the area, it is Johnson's opinion that the Property, as of the date of filing of the instant case (March 1, 2019), had a current market value of $513,000.00.

Debtor replied with what Debtor refers to as a "more refined Broker Price opinion" and the

Declaration of Osceola Winnumucca Stephenson in support of the Reply. Dckt. 209, 210. Stephenson is a real estate agent licensed in California. Declaration, Dckt. 209. After a physical examination of the Property on February 8, 2020, Stephenson values the property, as of March 1, 2019, at $470,000.00. Stephenson arrives at this value due to several features of the residence:

    a.      No high ceilings

    b.      No steeply pitched roof

    c.      $96,050.00 worth of necessary repairs due to lack of maintenance since its construction

    d.      House was built with defective windows that have caused dry rot

    e.      29 windows need replacement due to water damage

    f.      Major systems not in proper working order

    g.      Heating and air system did not function properly

    h.      Main floor ceiling water intrusion to be replaced due to dry rot damage

Stephenson points out that Creditor's Appraisal Report did not address the needed repairs to the Property.

**Analysis of Expert Testimony**

<u>Evidence Presented by Debtor</u>

The court begins with the evidence of value presented by Debtor. Stephenson's declaration was filed on April 21, 2020. Dckt. 209. Stephenson testifies to being a licensed real estate agent by the State of California who works with Red Dog Real Estate. Stephenson has prepared the Broker's Price Opinion ("BPO") for the value of the Property as of March 1, 2019 (the date this bankruptcy case was filed). The BPO is filed as an exhibit with Stephenson's Declaration. BPO, Dckt. 210.

The BPO states that in its As-Is condition, the Property has a Probable Sales Price Value of $465,000.00 with a 90-day marketing period and $475,000.00 with a 180-day marketing period. BPO, Value Estimation section; *Id.*

In the BPO, Stephenson identifies ($96,050.00) of repairs needed for the Property which are taken into account in Stephenson developing the BPO of value. Stephenson states the Property is

in fair condition, with immediate repairs to be taken by the buyer to include replacement of windows and that "major systems" not being in "proper working order."

Stephenson identifies three listing comparables that he uses and three closed sales comparables (all with sales dates of January 2019), for which the properties are within 0.3 miles of the Property. *Id.*, p. 2.

Stephenson explains his condition and style considerations in coming to the value. Declaration, Dckt. 209. Stephenson also discusses: (1) the water damage caused by leakage at the windows and the need for the replacement of 29 windows; (2) that the heating and air conditioning system did not "function properly" (but did not explain what did not work) and that it needs to be replaced; and (3) necessary repairs for the damage caused by the water intrusion.

Stephenson also discusses that the valuation provided in the appraisal testimony provided by Johnson, which while consistent with that of Stephenson in considering comparable properties, does not take into account the damages and necessary repairs that a buyer would consider.

<u>Evidence Presented by Creditor</u>

Creditor has provided the Declaration and Appraisal Report of Johnson. Dckt. 198 (Appraisal Report Exhibit attached to the Declaration). The Declaration and Appraisal Report review Johnson's experience and knowledge to provide expert witness testimony. Johnson testifies that the Property was inspected, interior and exterior, as part of Johnson's acts in coming to an opinion of $513,000.00 for the value of the Property.

In the Appraisal Report, Johnson identifies three comparable property sales, with the comparables 0.9 miles to 1.62 miles from the Property. Appraisal Report page 2 of 6; Dckt. 198. The three comparables are for sales in April 2018, December 2018, and January 2019.

For the valuation, in the Supplemental Addendum (Dckt. 198 at 12), Johnson states,

> The subject is of good quality construction that conforms to the local neighborhoods in quality and design . . . The subject features moderate upgrades and has some unique design features to include coffered ceilings in the dining room, but does not appear to have any recent updating. The kitchen has upgraded cabinetry, granite counters and back splash, standard grade appliances, and tile flooring . . . **Overall the dwelling appears in average to fair condition** and **water staining was noted on the ceiling areas in the family room / kitchen areas due to apparent leaking**. It is **recommended that a professional be consulted to mitigate further**

> **damage** . . . There is also a large hole in the corner of the ceiling hallway near the half bathroom (see photo addendum). It is unclear why this exists as no water damage was noted in the immediate area.
> . . .
> All utilities were on at the time of inspection and mechanical systems appear to be functioning in a normal manner . . .

Johnson includes pictures of the Property. Dckt. 198 at 19-22. The picture of the rear of the home shows garbage, appliances, and other "stuff" strewn around the patio. *Id.* at 19. A side view picture appears to be a structure with "stuff" piled up inside, including rolled up carpeting. *Id.* at 20.

The picture titled "Water Damage in Ceiling" (*Id.*) shows a large, jagged hole in the ceiling, with something hanging out of the hole (which the court could not identify even when the picture was enlarged). Water stains on the ceiling to the right of the hole are visible.

There are two other water damage pictures from the family room, showing water stains near a ceiling fan. *Id.*

A picture of the garage shows it filled (but for a narrow walkway) with open boxes of "stuff." *Id.* at 21. It appears that Debtor has piled up "stuff" on "stuff," creating a large, disorganized pile of "stuff."

In another ceiling picture, there is a hole in the ceiling and wall where two walls meet. *Id.* It appears, that in addition to the hole, the crown molding on a wall is missing.

The last picture is one showing water damage and staining at a window. *Id.* at 22. Through the window, one can see into the backyard, filled with piles of "stuff," similar to what is piled up next to the back of the house on the patio.

Determination of Value

The evidence presented by both experts presents the court with documentation of there being significant damage to the Property. As shown by the photos and the Stephenson Declaration, there are multiple holes in the ceiling, water damage in the ceiling and windows, and the need for significant repairs. Additionally, the photographs further show a lack of maintenance in and around the Property, including the trash and "stuff" piled up around the house on the patio, in the backyard, and in the garage.

Creditor's appraiser opinion of value is $513,000.00. While acknowledging that there is

significant damage to the structure, Johnson makes no clear adjustments for it. Rather, Johnson's Appraisal Report states that further investigation is required of the damage.

The three comparables used by Johnson, Creditor's expert, in the Appraisal Report had sales prices of $510,000.00, $520,000.00, and $525,000.00. In reaching the $513,000.00 value for the Property, Johnson makes no adjustment for condition, stating in the Appraisal Report that the Property and the three comparables are all of Good Construction and in Average Condition. Appraisal Report, p. 2 of 6; Dckt. 198. There is nothing provided by Johnson to indicate that the three comparables were "Average Condition" properties with water stained ceilings, a gaping hole in the ceiling and another hole in the wall, water damage around the windows, and no treatment or repairs for the obvious and significant visible and the hidden damage to the structure.

Stephenson, the Debtor's expert, states that Stephenson's opinion of value is in line with Johnson, with a downward adjustment of ($95,000.00) for the obvious necessary repairs. Actually, it appears that Stephenson may have started with a higher value or has not made a full adjustment of ($95,000.00) in coming to the BPO Value of $470,000.00 (based on a 120-day marketing period, which is not commercially unreasonable).

While opining for the BPO Value that the repair costs of ($95,000.00) are necessary, there is no other testimony from a contractor or other construction expert as to the costs of such repairs. The court recognizes that though real estate professionals do have knowledge of real property values and have addressed adjusting sales prices due to repairs, they are not contractors or construction experts.

From the evidence presented, the court determines that the value of the property securing Creditor's claim is $470,000.00. That is within $40,000.00 - $50,000.00 of Johnson's comparables, the values of which are without any adjustment for damages.

The court shall issue a separate order granting the relief consistent with this Memorandum Opinion and Decision.

Dated: May 27, 2020

By the Court

*Ronald H. Sargis, Judge*
*United States Bankruptcy Court*

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Secured Creditor:<br><br>Real Time Resolutions, Inc.<br>c/o Renee M. Parker, Esq.<br>27455 Tierra Alta Way, Ste. B<br>Temecula, CA 92590 |